UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JEAN MARIE TORRES-MONTOYA and
DENNIS WILLIAM MONTOYA,   Case No. 17-11823 ta7

    Debtors.

## **OPINION**

Before the Court is Dennis O'Brien's motion for relief from the automatic stay, filed to allow the continuation of pending state court litigation against the debtor, Dennis Montoya. Having reviewed the motion, all supporting affidavits and briefs, and having taken testimony and other evidence at a final hearing, the Court concludes that stay relief is not warranted because it could result in overlapping state and federal trials.

I.    FACTS

For the limited purpose of ruling on the Motion, the Court finds no genuine dispute as to the following facts:[1]

On November 4, 2002, O'Brien, a sergeant in the Santa Fe County Sheriff's Department, was dispatched to a domestic disturbance. There, he encountered an intoxicated and mentally ill man named Walter Mitchell, who threatened O'Brien and others with a sword. Ultimately, after Mitchell advanced on O'Brien and refused repeated orders to put the sword down, O'Brien shot and wounded Mitchell. Mitchell was indicted for aggravated assault against a peace officer and

---

[1] In making these findings, the Court took judicial notice of the docket in this bankruptcy case and in the federal and state court cases involving the parties. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket").

aggravated assault with a deadly weapon. In 2004, Mitchell was found "guilty but mentally ill" on both counts.

On November 2, 2005, Dennis Montoya brought a federal civil rights action on Mitchell's behalf against the City of Santa Fe[2] and O'Brien[3] (the "Excessive Force action"). Montoya filed a return of service that purported to show service of process on O'Brien. O'Brien contends he was never served.

In April 2006, Montoya filed an amended complaint in the action. The amended complaint corrected the spelling of O'Brien's name and changed the other named defendant to Santa Fe County. Montoya filed a certificate of service, certifying that a copy of the amended complaint "will be served" on Santa Fe County. It never was. O'Brien never got a copy of the amended complaint either; Montoya chose not to serve him because of O'Brien's alleged failure to answer the original complaint.

Montoya moved for a default judgment against O'Brien. The motion was granted as to liability on May 9, 2006. In December 2007, the court held a damages trial and a jury awarded Mitchell $2,500,000 in compensatory and $500,000 in punitive damages. Neither defendant appeared at the trial. About two weeks after the damages trial, Montoya dismissed his claims against Santa Fe County, leaving O'Brien as the sole defendant and judgment debtor.

On July 29, 2009, Montoya filed a "Notice of Lis Pendens" in the Excessive Force action, allegedly relating to certain Santa Fe real estate.[4] There is no indication the notice was ever filed in the county real estate records.

On February 22, 2010, O'Brien first learned of the $3,000,000 judgment against him. Santa Fe County and O'Brien immediately filed an action in federal court to set aside the default

---

[2] The wrong party; it should have been Santa Fe County.
[3] Misspelled as "O'Brian."
[4] The notice clearly was improper, as the Excessive Force action did not relate to real estate.

-2-
Case 17-11823-t7    Doc 53    Filed 11/21/17    Entered 11/21/17 10:58:40 Page 2 of 10

judgment. Their efforts resulted in an order vacating the default judgment *ab initio* and dissolving the purported lis pendens. In exchange, Mitchell was paid between $75,000 and $100,000.

On December 22, 2011, O'Brien sued Montoya in state court, seeking damages for Montoya's alleged malicious abuse of process (the "Abuse of Process action"). After briefing and a hearing, the state court entered summary judgment against Montoya in the action, awarding O'Brien $192,000 in compensatory and $384,000 in punitive damages.

Montoya appealed the judgment, arguing in part that O'Brien's complaint was barred by the statute of limitations. On July 5, 2016, the court of appeals reversed the judgment and remanded the case for trial of, inter alia, the statute of limitations defense. The remanded case was set for a bench trial in state court on July 24, 2017. Montoya and his wife filed this bankruptcy case on July 17, 2017.

On July 21, 2017, O'Brien filed the present stay relief motion, asking the Court to lift the automatic stay so he could proceed in the Abuse of Process action.

On October 13, 2017, O'Brien brought an action against Montoya in bankruptcy court, alleging that his claims against Montoya are nondischargeable under §§ 523(a)(2)(A) and (a)(6) (the "Nondischargeability action").

The bankruptcy case is a no-asset case. No bar date has been set, and general unsecured creditors will not be paid.

## II. DISCUSSION

A.  The *Curtis* Factors

O'Brien requests that the Court lift the stay "for cause" under § 362(d)(1). The Tenth Circuit "has not set forth a precise framework or exhaustive set of factors for analyzing whether cause exists." *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), overruled on other grounds, *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).

However, when a party seeks stay relief to proceed with a pending state court action, courts often rely on "[a] list of factors identified in *In re Curtis* . . . in their determination of whether stay relief should be granted." *Dampier v. Credit Investments, Inc. et al. (In re Dampier)*, 2015 WL 6756446, at *4 (10th Cir. BAP 2015). *See also Busch v. Busch (In re Busch)*, 294 B.R. 137, 141 (10th Cir. BAP 2003); *In re Blair*, 534 B.R. 787, 792 (Bankr. D.N.M. 2015); *In re Sunland, Inc.*, 508 B.R. 739, 743 (Bankr. D.N.M. 2014). The "*Curtis* factors" are:

1. Whether the relief will result in a partial or complete resolution of the issues;
2. The lack of any connection with or interference with the bankruptcy case;
3. Whether the foreign proceeding involves the debtor as a fiduciary;
4. Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases;
5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
7. Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;
8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);
9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);
10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties;
11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial;
12. The impact of the stay on the parties and the 'balance of hurt.'

*In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).

B.  Weighing the *Curtis* Factors.

The Court analyzes the *Curtis* factors as follows:

| *Curtis* Factor | Balance in Favor of Lifting or Retaining Stay |
|---|---|
|  |  |
| 1. Partial or complete resolution of issues? | Stay relief has been denied where a foreign proceeding would result in only partial resolution of relevant factual or legal issues. *See, e.g., In re Cloud Nine, Ltd.*, 3 B.R. 202, 204 (Bankr. D.N.M. 1980). Here, a judgment in the Abuse of Process action might not resolve the Nondischargeability action. *See* Section C below. |

| | |
|---|---|
| 2. Connection or interference with bankruptcy case? | The Abuse of Process action is connected to the bankruptcy case because it would liquidate the claim of the only interested creditor. The action could interfere with the case if it took a long time to try or if it did not resolve the Nondischargeability action. *See* Section C below. |
| 3. Involvement of Montoya as a fiduciary? | O'Brien does not allege Montoya was a fiduciary. |
| 4. Specialized Tribunal? | The state court is not a specialized tribunal. |
| 5. Involvement of an insurance carrier? | No insurance carrier is involved. |
| 6. Third party Involvement, with debtor as bailee? | There is no allegation Montoya was a bailee. |
| 7. Would litigation in another forum prejudice other creditors? | This is a no-asset case. O'Brien is the only creditor taking an interest in the case. |
| 8. Whether judgment claim arising from foreign proceeding is subject to equitable subordination under § 510(c)? | The claim is not subject to equitable subordination. |
| 9. Whether success in foreign proceeding would result in a judicial lien, avoidable under § 522(f)? | The claim would not give rise to an avoidable judicial lien. |
| 10. Judicial economy | *See* Section C below. |
| 11. Progress of state court action | The Abuse of Process action is ready for trial. Normally, this would weigh in favor of lifting the automatic stay. *See*, however, Section C below. Also, the trial preparation can be transferred to this court. |
| 12. Impact of stay on parties | The stay prevents O'Brien from trying the Abuse of Process action, but he can try his claims in this Court, together with his nondischargeability claims. *See* Section C below. |

C.   Overlap between the Abuse of Process Action and the Nondischargeability Action.

The state court clearly can determine how much, if anything, Montoya owes O'Brien. It is equally clear, however, that the state court cannot rule on whether Montoya's debt is nondischargeable. *See Estate of Coleman v. Mladek, (In re Michelle Mladek)*, 2017 WL 5198152, at *3 (Bankr. D.N.M.) (citing *Deitz v. Ford (In re Deitz)*, 760 F.3d 1038, 1043 (9th Cir. 2014)

(bankruptcy court has exclusive jurisdiction to determine the dischargeability of debts under § 523(a)(2)(A), (a)(4), or (a)(6)). [5]

It could be that, if the Court modified the automatic stay, the findings of fact from the Abuse of Process action would form the basis for issue preclusion in the Nondischargeability action. *See generally Shovelin v. Cent. N.M. Elec. Co-op., Inc.*, 115 N.M. 293, 297 (S. Ct. 1993) (outlining what must be shown to invoke issue preclusion); *SIL–FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990) (issue preclusion applied to issues of fact and rulings of law). To analyze this, the Court will compare the elements of the Abuse of Process action with the Nondischargeability action.

1. § 523(a)(2)(A). This section excepts from discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . ." Because the allegations do not include representations to O'Brien, the cause of action must be for an alleged "actual fraud." *See, e.g., Husky International Electronics Inc. v. Ritz,* 136 S. Ct. 1581 (2016). The elements of an "actual fraud" claim are (i) the debtor committed actual fraud;[6] (ii) the debtor obtained money, property, services, or credit by the actual fraud; and (c) the debt arises from the actual fraud.[7]

Montoya recently filed a motion for partial judgment on the pleadings, arguing that O'Brien's §523(a)(2)(A) claim fails because O'Brien does not allege Montoya obtained any "money, property, services, or credit" from O'Brien. The motion has not yet been fully briefed, but testimony offered at a final stay relief hearing indicates that Montoya's client was paid between

---

[5] Determining whether a debt is nondischargeable is a two-step process. First, the creditor must show that he has a claim against the debtor. If that showing is made, then the creditor must show that the claim is nondischargeable under § 523(a). *In re Thompson*, 555 B.R. 1, 8 (10th Cir. BAP 2016).

[6] This has been held to include, more broadly, "a scheme to deprive or cheat another of property or legal right." *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 690 (10th Cir. BAP 2013).

[7] *Hatfield v. Thompson (In e Thompson)*, 555 B.R. 1, 10 (10th Cir. BAP 2016).

$75,000 and $100,000 in settlement. If Montoya received some portion of that money, then the "money obtained by fraud" requirement would be satisfied. Further, it is possible under such a scenario that *all* damages caused by the alleged "actual fraud" would be nondischargeable. *See, e.g., Cohen v. de la Cruz,* 523 U.S. 213 (1998). The Court makes no ruling on any of these issues, but does rule that the § 523(a)(2)(A) claim is viable enough to be considered in connection with the stay relief motion.

2.  § 523(a)(6). To satisfy his burden under § 523(a)(6), O'Brien must prove: (1) either he or his property sustained an injury; (2) the injury was caused by Montoya; (3) Montoya's actions were "willful;" and (4) Montoya's actions were "malicious." *In re Deerman*, 482 B.R. 344, 369 (Bankr. D.N.M. 2012).

To be willful, a debtor must have intended both the act and the resulting harm. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) ("The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."); *see also Deerman*, 482 B.R. at 369 (citing *Geiger*). For a debtor's actions to be malicious, they must be intentional, wrongful, and done without justification or excuse. *Deerman*, 482 B.R. at 369 (citing *Bombardier Capital, Inc. v. Tinkler*, 311 B.R. 869, 880 (Bankr. D. Colo. 2004)). The Tenth Circuit uses a subjective standard in determining whether a defendant desired to cause injury or believed the injury was substantially certain to occur. *Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, 2000 WL 1275614, at *3 (10th Cir. 2000) (unpublished) ("[T]he 'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur"); *Saturn Sys., Inc. v. Militare (In re Militare)*, 2011 WL 4625024, at *3 (Bankr. D. Colo. 2011) (citing *Tinkler*).

Knowing or intentional conduct is not enough to trigger § 523(a)(6) liability; the plaintiff must also show that the defendant intended to do harm. *See, e.g., In re Osborne*, 520 B.R. 861, 873 (Bankr. D.N.M. 2014) (denying plaintiff's § 523(a)(6) claim because, while defendant intentionally concealed property encumbrances, there was no evidence that defendant intended harm or acted with malice); *Humility of Mary Health v. Garritano (In re Garritano)*, 427 B.R. 602, 613 (Bankr. N.D. Ohio 2009) (to the same effect).

3. "Malicious Abuse of Process" under State Law. In *DeVaney v. Thriftway Mktg. Corp.*, 124 N.M. 512 (S. Ct. 1998), the New Mexico Supreme Court reformulated the torts of abuse of process and malicious prosecution into a single tort of malicious abuse of process. Under current New Mexico law, plaintiffs alleging malicious abuse of process must prove the following elements:

> (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages.

*Durham v. Guest,* 145 N.M. 694, 701 (S. Ct. 2009).[8] Claims for malicious abuse of process may be asserted as a result of either a "procedural irregularity" involving misuse of procedural devices such as discovery, or "an act that otherwise indicates the wrongful use of proceedings." *Fleetwood Retail Corp. of New Mexico v. LeDoux*, 142 N.M. 150, 155 (S. Ct. 2007).

4. Comparing the claim elements. The following table summarizes the similarities and differences between the causes of action:

| Element | § 523(a)(2)(A) | § 523(a)(6) | Malicious abuse of process |
|---|---|---|---|
| A debt | X | X | X |

---

[8] The second element is not clearly drafted. The Court reads it to mean "a primary motive in the use of process *[is the accomplishment of]* an illegitimate end." That is how the element has been applied. *See, e.g., Straumann v. Massey*, 2017 WL 2992471, at *5 (N.M. App.)

-8-

| | | | |
|---|---|---|---|
| Actual fraud, i.e., a scheme to deprive or cheat another of property or legal right | X | | |
| Montoya obtained money, etc. by actual fraud | X | | |
| The debt at issue arises from the actual fraud | X | | X |
| Montoya's actions were "willful" | | X | |
| Montoya's actions were "malicious" | | X | |
| Injury to O'Brien or his property | | X | X |
| Injury caused by the debtor | | X | X |
| Improper use of process in a judicial proceeding | | | X |
| Montoya's primary motive was illegitimate | | | X |

Some of the § 523(a) nondischargeability elements are technical, including:

- Whether Montoya's action constituted "actual fraud" under § 523(a)(2)(A);
- Whether Montoya's actions were "willful" within the meaning of § 523(a)(6), as interpreted by the Tenth Circuit;
- Whether Montoya's actions were "malicious" within the meaning of § 523(a)(6), as interpreted by the Tenth Circuit;
- Are any of the damages for "money, property [or] services" . . . "obtained by . . . actual fraud . . . ."
- If so, whether all damages are nondischargeable. *See, e.g., Cohen v. de la Cruz*, 523 U.S. 213 (1998).

D.  Final *Curtis* Factors Analysis.

If this were an asset case and O'Brien's claim simply needed to be liquidated for distribution purposes, the *Curtis* factors would weigh in favor of stay relief. However, because the claim needs to be both liquidated and adjudicated under the Code's nondischargeability provisions, the weight of the *Curtis* factors tips against stay relief. All things considered, the Court finds that factors 7, 8, 9, and 11 weigh in favor of stay relief, while factors 1, 2, 3, 4, 5, 6, 10, and 12 weigh against stay relief. The Court further finds that factors 1 and 10 are particularly significant in this matter.

III.  CONCLUSION

The Court finds and concludes that the *Curtis* factors weigh against modifying the automatic stay. The risk is too great that the Abuse of Process action would not determine the Nondischargeability action, requiring the Court to re-try the facts to determine O'Brien's §§ 523(a)(2)(A) and (a)(6) claims. By keeping the stay in place, the Court can determine all issues, including the statute of limitations, liability, damages, and dischargeability. No significant delay should result.

The Court will enter a separate order denying the stay relief motion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: November 21, 2017

Copies to:

Michael K. Daniels
P.O. Box 1640
Albuquerque, NM 87103

William F. Davis
6709 Academy Rd. NE, Ste. A
Albuquerque, NM 87109

Joel A. Gaffney
6709 Academy Rd. NE, Ste. A
Albuquerque, NM 87109